UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION
(at London)

| | | |
|---|---|---|
| JOHN WILSON, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 6: 10-089-DCR |
| | ) | |
| V. | ) | |
| | ) | |
| MICHAEL J. ASTRUE, | ) | **MEMORANDUM OPINION** |
| Commissioner of Social Security, | ) | **AND ORDER** |
| | ) | |
| Defendant. | ) | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

This matter is pending for consideration of cross-motions for summary judgment filed by Plaintiff John Wilson ("Wilson" or "the Claimant") and Defendant Michael J. Astrue, Commissioner of Social Security ("Commissioner"). [Record Nos. 6, 7] Wilson argues that the Commissioner erred in finding that he is not disabled. In relevant part, Wilson asserts that the Administrative Law Judge ("ALJ") assigned to conduct the administrative hearing did not give adequate reasons for rejecting the opinion of C. Todd Stokes, a doctor who he contends was his treating physician. Further, Wilson argues that the ALJ did not properly consider combined effects of his impairments or the "durational requirements" of the ability to perform substantial gainful activity. Instead, he contends that the ALJ merely considered his ability to find a job and perform it. Wilson seeks to have this matter remanded for an award of benefits or further factual findings on the issues raised in his summary judgment motion. However, through his motion

for summary judgment, the Commissioner contends that the ALJ's decision is supported by substantial evidence and should be affirmed.

For the reasons discussed below, the Court will grant the Commissioner's motion and deny the relief requested by Wilson.

## I.

On July 17, 2007, Wilson filed applications for disability insurance benefits under Title II and supplemental security income ("SSI") under Titles II and XVI of the Social Security Act. He alleged a disability beginning July 16, 2007. [Tr., p. 94] Wilson's claims were denied initially and upon reconsideration. [Tr., pp. 46-47] Thereafter, a video hearing was held before ALJ Joan A. Lawrence on November 13, 2008. Wilson appeared at the hearing along with his attorney, Stacy Byrns Taulbee, and vocational expert ("VE") William Ellis. [Tr., p. 20] In a decision dated July 17, 2009, ALJ Lawrence found that Wilson was capable of performing past relevant work as a janitor and that he was not under a disability as defined in the Social Security Act. As a result of this finding, the ALJ concluded that Wilson was not entitled to disability insurance benefits or supplemental security income. [Tr., p. 24]

Wilson appealed ALJ Lawrence's decision to the Social Security Administration's Appeals Council. [Tr., pp. 14-16] On December 4, 2009, Wilson's new attorney, Roger Riggs, was notified that the Appeals Council had granted his request for review of the ALJ's decision and would consider additional evidence to be submitted within thirty days. [Tr., pp. 9-13] The additional materials submitted for the Appeals Council's consideration are included in the Administrative Transcript as Exhibits 9B, 10B, 11B, 19F, and 20F.

The Appeals Council issued its decision on January 26, 2010, concluding that Wilson was not entitled to or eligible for a period of disability or disability insurance benefits under sections 216(i) and 223, respectively, or supplemental security income payments under section 1602 and 1614(a)(3)(A) of the Social Security Act. [Tr., pp. 4-7] After summarizing the additional information submitted by the Claimant, the Appeals Council found that this additional material was either duplicative or cumulative and, therefore, not material to the ALJ's decision. However, the Appeals Council rejected the ALJ's findings and conclusions regarding whether Wilson could perform his past relevant work. More specifically, it did not adopt the conclusion that Wilson could perform work as a janitor because there was no evidence in the record to indicate that he had actually performed such work within fifteen years before the alleged onset of his disability. [Tr., p. 5] In relevant part, the Appeals Council found that:

> the claimant's past work as a cleaner or janitor is not vocationally relevant. However, the claimant's past work as tobacco farmer and/or farm worker is vocationally relevant as it was performed at or above the substantial gainful activity levels, and was performed and is generally performed at the heavy exertional level. Therefore, based on the Administrative Law Judge's finding that the claimant is limited from performing work in excess of his residual functional capacity (RFC) for work at the medium exertional level, the claimant is not able to perform his past relevant work.

[Tr., p. 5]

Notwithstanding the Appeals Council's finding that Wilson could not perform his past work activity, it further concluded that he still perform work at the medium exertional level and was not disabled according to Medical Vocational Rules 203.18 and 203.11.[1] [Tr., p. 6]

---

[1] Medical Vocational Rule 203.18 applies to persons who have attained the age of 50, but not 55, have a limited education, have performed past relevant work, can perform work at the medium exertional level, and directs a conclusion of not disabled. The rule which applies to claimants between 55 and 60 years of age with

**II.**

Wilson was fifty-three years old at the time of the alleged onset of his disability. [Tr., p. 30] He has an ninth-grade education and work experience as a farmer. As noted above, while Wilson has performed other work activities, those activities were not considered vocationally relevant by the Appeals Council. Wilson's alleged disability stems from heart problems, arthritis and related pain. [Tr., pp. 94, 110, ] However, during the November 13, 2008, administrative hearing, the focus of Wilson's complaints was pain associated with his arthritic condition.

> Q. . . . let's talk about the problems that you've been having. Why don't you tell me what it is that you think keeps you from being able to work?
>
> A. Will, my arms and legs hurt. They hurt all the time and stuff and the neck and back and stuff like that.
>
> Q. Okay. Now, how long has that been a problem for you the pain that you're receiving?
>
> A. About a year.
>
> Q. Okay. And was there anything that started that?
>
> A. I seen Dr. Stokes, and he said it was arthritis or stuff.[2]
>
> Q. Okay. And how often are you having the pain?

---

the same limitations – Medical Vocational Rule 203.11 – also directs a conclusion of not disabled.

2  According to information supplied by Wilson to the Social Security Administration, Wilson first visited Dr. Stokes on October 1, 2007. [Tr., p. 126] However, the date provided by Wilson appears to be inconsistent with the medical records provided by Dr. Stokes. Notwithstanding the date of the visit, it appears that Dr. Stokes did not examine Wilson until sometime around the date that he filed for social security benefits. The reason given for the visit was "arthritis, heart attack, legs and hips." There is no indication that treatment was provided by Dr. Stokes, other than two medications being prescribed for pain. However, as discussed more fully below, it appears that Dr. Stokes prepared a one-page form on November 9, 2007, captioned "Physical Capacities Evaluation." [Tr., p. 262] This form is the focus of Wilson's primary argument that the ALJ erred in failing to properly credit the opinion of Dr. Stokes as his treating physician.

A. Every few minutes every day.

Q. Okay.

A. My arms is hurting right now.

Q. Okay. Is – are there times when the pain is worse than other times?

A. Yeah. Sometimes it is worse.

Q. Okay. Anything – go ahead.

A. Sometimes it's worse than it is sometimes.

Q. Okay. And is there anything in particular that seems to make it that way –

A. No. Just –

Q. – things that make it worse?

A. Just hurting in my elbows and stuff.

Q. Okay. But is there anything that you, anything that happens that makes the pain worse?

A. No. Just standing around can make it hurt.

Q. Okay. What kind of treatment have you received for that?

A. Just went to see Olridge and stuff, and he said has to –

Q. I'm sorry.

A. He said I had a spur or something or other in my neck.

[Tr., pp. 34-35]

While the ALJ's decision regarding Wilson's ability to perform prior work as a janitor is not controlling, her conclusions regarding the Claimant's ability to perform medium work was adopted by the Appeals Council. After reviewing the record and the testimony presented at the

hearing, the ALJ concluded that Wilson suffered from the severe impairments of hypertension and chronic pulmonary deficiency. [Tr., p. 22] Notwithstanding these impairments, the ALJ found that Wilson retained the residual functional capacity ("RFC") "to perform the full range of medium work as defined in 20 CFR 404.1567(c) and 416.967(c)." More specifically, the ALJ found that the Claimant retains "a functional capacity to perform the exertional demands of medium work, or work which requires maximum lifting of 50 pounds and frequent lifting of 25 pounds." [Tr., pp. 22-23]

In reaching this decision, the ALJ specifically addressed the nature and effect of the Claimant's impairments on his ability to perform work at the medium exertional level. The ALJ considered Wilson's complaints of pain in light of the objective medical evidence supporting those complaints and found them to be not credible. Further, ALJ Lawrence specifically considered the Physical Capacities Form provided by Dr. Stokes and found that the conclusions outlined on that form were not supported by other objective evidence in the record. With respect to these latter two items, the ALJ stated as follows:

> After careful consideration of the evidence, the undersigned finds the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not credible to the extent they are inconsistent with the above residual functional capacity assessment.
>
> The claimant's treatment provider noted on April 8, 2005, that the claimant had a history of COPD with a history of medical non-compliance (Exhibit 10F, p. 7).
>
> Treatment records dated April 9, 2005, indicate that the claimant was admitted with left sided chest pain, shortness of breath, and a history of emphysema. Upon examination the claimant denied any loss of consciousness, and he was found to have no significant lower extremity edema. His blood pressure was 116/82. He had a normal electrocardiogram, but was recommended for catheterization. The

> claimant had normal coronary arteries with a 50 percent ejection fraction. On June 4, 2005, indicated chronic obstructive pulmonary disease without evidence of acute disease. Imaging studies indicated no enlargement of the heart (Exhibits 1F, 2F). The claimant was prescribed nitroglycerin (Exhibit 3F). On August 2, 2007, the claimant reported right knee pain. Examination revealed soft tissue swelling, however, imaging revealed no abnormality (Exhibit 4F).
>
> In treatment records dated June 20, 2007, the claimant reported leg pain. He was noted to have a blood pressure reading of 112/70. On November 7, 2007, the claimant reported difficulty sleeping for the previous few months. He had a blood pressure reading of 130/72 (Exhibit 10F).
>
> *As for the opinion evidence, the opinion of Exhibit 8F is considered. This provider opines that the claimant is limited to sitting, standing, and walking for no more than one hour. However, there are no clinical signs or medical findings in treatment notes that corroborate this degree of restriction. Additionally, in chest x-rays in September 2007 that were "unremarkable" or "suggesting COPD without active airspace disease" and a right knee x-ray of August 2007 indicating "mild anterior soft tissue swelling without acute osseous abnormality." Therefore, because this opinion is inconsistent with the evidence, it is given little weight. Dr. Dennis Ulrich opined that the claimant's left arm pain would require unscheduled breaks throughout an eight hour workday (Exhibit 15F). However, although an MRI dated October 29, 2008, indicates stenosis at the C4-5 and C6-7 levels, the evidence does not support disability. The claimant's testimony that he continued to perform work every other day, feeding cows, using a tractor to pick up hay, and performing work involving carpentry and painting. Therefore, this opinion is given little weight.*

(Emphasis added.) [Tr., pp. 23-24]

The administrative record of this proceeding also reflects that, after Dr. Stokes "Physical Capacities Evaluation" form was submitted to the Social Security Administration, an ALJ requested that Stokes provide clarification for the opinions contained on the form. [Tr., p. 311] ALJ Donald Rising's November 7, 2008, letter to Dr. Stokes references his opinion concerning the Claimant's limitations in sitting, standing and walking and requests that Stokes provide

supporting documentation within thirty days. However, it does not appear that Dr. Stokes provides a response or further documentation supporting his earlier opinions.

**III.**

Under the Social Security Act, a "disability" is defined as "the inability to engage in 'substantial gainful activity' because of a medically determinable physical or mental impairment of at least one year's expected duration." *Cruse v. Comm'r of Soc. Sec.*, 502 F.3d 532, 539 (6th Cir. 2007). A claimant's Social Security disability determination is made by an ALJ in accordance with "a five-step 'sequential evaluation process.'" *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642 (6th Cir. 2006) (en banc) (quoting 20 C.F.R. § 404.1520(a)(4)); *see also* 20 C.F.R. § 416.920(a)(4). If the claimant satisfies the first four steps of the process, the burden shifts to the Commissioner with respect to the fifth step. *See Jones v. Comm'r of Soc. Sec.*, 336 F.3d 469, 474 (6th Cir. 2003).

First, a claimant must demonstrate that he is not currently engaged in substantial gainful employment at the time of the disability application. 20 C.F.R. § 404.1520(b); 20 C.F.R. § 416.920(b). Second, the claimant must show that he suffers from a severe impairment. 20 C.F.R. § 404.1520(c); 20 C.F.R. § 416.920(c). Third, if the claimant is not engaged in substantial gainful employment and has a severe impairment which is expected to last for at least twelve months and which meets or equals a listed impairment, he will be considered disabled without regard to age, education, and work experience. 20 C.F.R. § 404.1520(d); 20 C.F.R. § 416.920(d). Fourth, if the Commissioner cannot make a determination of disability based on medical evaluations and current work activity and the claimant has a severe impairment, the

Commissioner will then review the claimant's residual functional capacity and relevant past work to determine whether he can do past work. If he can, he is not disabled. 20 C.F.R. § 404.1520(f); 20 C.F.R. § 416.920(f).

Under the fifth step of the analysis, if the claimant's impairment prevents him from doing past work, the Commissioner will consider his RFC, age, education, and past work experience to determine whether he can perform other work. If he cannot perform other work, the Commissioner will find the claimant disabled. 20 C.F.R. § 404.1520(g); 20 C.F.R. § 416.920(g). The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform." *Howard v. Comm'r of Soc. Sec.*, 276 F.3d 235, 238 (6th Cir. 2002) (quoting *Her v. Comm'r of Soc. Sec.*, 203 F.3d 388, 391 (6th Cir. 1999)).

Judicial review of the denial of a claim for social security benefits is limited to determining whether the ALJ's findings are supported by substantial evidence and whether the correct legal standards were applied. *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). The substantial evidence standard presupposes that there is a zone of choice within which decision makers can go either way, without interference from the court. *McClanahan v. Comm'r of Soc. Sec.*, 474 F.3d 830, 833 (6th Cir. 2006). Substantial evidence is such relevant evidence as a reasonable mind might accept as sufficient to support the conclusion. *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Bass v. McMahon*, 499 F.3d 506, 509 (6th Cir. 2007).

If supported by substantial evidence, the Commissioner's decision must be affirmed even if the Court would decide the case differently and even if the claimant's position is also

supported by substantial evidence. *Smith v. Comm'r of Soc. Sec.*, 482 F.3d 873, 876 (6th Cir. 2007); *Colvin v. Barnhart,* 475 F.3d 727, 730 (6th Cir. 2007); *Longworth v. Comm'r of Soc. Sec. Admin.*, 402 F.3d 591, 595 (6th Cir. 2005); *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1233 (6th Cir. 1993). Thus, the Commissioner's findings are conclusive if they are supported by substantial evidence. 42 U.S.C. § 405(g).

## IV.

While Wilson's counsel raises five issues in support of his motion for summary judgment, the Commissioner properly notes that the first, second and fifth issues are essentially the same: that is, whether the ALJ gave proper weight to the opinion of Dr. Stokes. In addition to this issue, Wilson asserts that the ALJ erred in failing to consider the combined effects of all of his impairments. Finally, he contends that the ALJ's decision should be reversed because she failed to consider the durational requirements of substantial gainful activity and not merely the ability to find a job and physically perform it.

### A. Opinion of Dr. C. Todd Stokes

A treating source's opinion as to the nature and severity of a claimant's impairments will be given controlling weight provided it "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with other substantial evidence in [the] case record." *Rogers*, 486 F.3d at 242 (internal quotation omitted) (alteration in original). If the ALJ determines that a treating physician's opinion is not entitled to controlling weight, he must give "good reasons" for his decision. *Id.* These reasons must be "'sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's

medical opinion and the reasons for that weight.'" *Id.* (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5).

In the present case, the Court does not believe that Dr. Stokes may be properly classified as a treating physician. *See* 20 C.F.R. §§ 404.1502, 416.902 (defining a treating source as a physician who "provides you, or has provided you with medical treatment or evaluation and who has, or has had, an ongoing treatment relationship with you."). As the Sixth Circuit noted in *Barker v. Shalala*, 40 F.3d 789, 794 (6th Cir. 1994), the treating source doctrine is based on the premise that a physician who has dealt with a patient/claimant over an extended period of time will have a better insight and understanding of his or her condition that a physician who has only examined the person one time. Here, no medical records have been presented which would indicate that Dr. Stokes conducted any medical or other testing to support the limitations reflected by the Physical Capacities Evaluation form he apparently filled out on November 9, 2008. Further, it appears that Wilson had only visited Dr. Stokes on one occasion prior to having him prepare and submit the form in issue.[3]

However, even if Dr. Stokes were considered a treating physician, ALJ Lawrence gave good reasons for rejecting him opinions regarding the effect of Wilson's limitations. As noted in the ALJ's decision, there were no clinical signs or medical findings in Dr. Stokes notes or records to support his opinion that Walker had severe restrictions in sitting, standing or walking. Further, Dr. Stokes opinions were inconsistent with the objective medical tests which revealed

---

3 The physician's notes dated June 20, 2007, indicate a physical examination was performed. With the exception that Wilson exhibited pain connected with extension and flexion of his right knee, no abnormalities were noted. Wilson was prescribed Naproxen and Ultram for his complaints of pain.

only mild soft tissue swelling of the right knee without acute abnormalities in August 2007 [Tr., p. 247], and "unremarkable" chest x-rays in September 2007 [Tr., p. 293]. Where, as here, the physician's opinions are not supported by clinical findings and are inconsistent with other medical evidence in the record, the ALJ and the Commissioner may correctly reject those opinions. *Walters v. Commissioner of Social Security*, 127 F.3d 525, 530 (6th Cir. 1997).

In light of the objective medical evidence in the record, the ALJ's decision to reject Dr. Stokes' opinion is supported by substantial evidence.[4]

### B. Combined Effect of Impairments

Wilson also argues that the ALJ did not consider the cumulative effect of his impairments. [Record No. 6] The ALJ is required to consider the combined effect of all the claimant's impairments in determining whether the claimant is disabled. 20 C.F.R. § 404.1523; 20 C.F.R. 416.923. The Sixth Circuit has held that "[a]n ALJ's individual discussion of multiple impairments does not imply that he failed to consider the effect of the impairments in combination, where the ALJ specifically refers to a 'combination of impairments' in finding that the plaintiff does not meet the listings." *Loy v. Sec'y of Health & Human Servs.*, 901 F.2d 1306, 1310 (6th Cir. 1990) (citing *Gooch v. Sec'y of Health & Human Servs.*, 833 F.2d 589, 592 (6th Cir. 1987)).

Here, ALJ Lawrence made a specific finding that Wilson "does not have an impairment *or combination of impairments* that meets or medically equals one of the listed impairments" in

---

4 The Commissioner's Motion for Summary Judgment contains a summary of treatment received by Wilson both before and after the alleged onset of his disability. [Record No. 7, pp. 2-5] This record of treatment supports the ALJ's finding that Wilson was not disabled during the relevant period.

the applicable regulations. [Tr., p. 22 (emphasis added)] She also made multiple references in her decision to Wilson's "impairments" (plural) and discussed each impairment in detail. [Tr., p. 20-25] Further, as noted by the Commissioner, the Claimant's counsel fails to explain how the combined effects of Wilson's impairments resulted in any limitation in excess of his RFC. Accordingly, the Court finds this argument to be without merit.

### C. Ability to Hold a Job for a Significant Period of Time

Finally, Wilson cites, *Gatliff v. Comm'r of Soc. Sec.*, 172 F.3d 690 (9th Cir. 1999), for the proposition that "substantial gainful activity means more than merely the ability to find a job and physically perform same. It also requires the ability to hold the job for a significant period of time." [Record No. 10, p. 6] He complains that the ALJ erred in failing to consider this case. However, this Court has considered *Gatliff* on a number of occasions and repeatedly rejected any suggestion of a separate durational requirement. *See Durham v. Astrue*, No. 09-202-DCR, 2010 U.S. Dist. LEXIS 15382, at *16-*17 (E.D. Ky., Feb. 22, 2010); *Johnson v. Astrue*, No. 08-298-JBC, 2009 U.S. Dist. LEXIS 71516, at *7-*8 (E.D. Ky. Aug. 10, 2009); *Wilder v. Astrue*, No. 08-108-KSF, 2009 U.S. Dist. LEXIS 20170, at *18 (E.D. Ky. Mar. 12, 2009); *Garland v. Astrue*, No. 07-181-DLB, 2008 U.S. Dist. LEXIS 45270, at *16 (E.D. Ky. June 10, 2008). Instead, the Court assumes that "[i]mplicit in the RFC assigned to Plaintiff by the ALJ is a finding that Plaintiff is capable of maintaining employment." *Garland*, 2008 U.S. Dist. LEXIS 45270, at *16. Thus, the RFC set out in ALJ Lawrence's decision reflected his determination of the type of work Wilson could perform for a significant period of time. *See id.*

### V.

Although Wilson has established that he suffers from some medical impairments, he has not established that his symptoms are severe enough to warrant Supplemental Security Income or disability insurance benefits. The ALJ did not err in giving little or no weight to the opinion of Dr. Stokes. Moreover, the ALJ gave sufficient consideration to the combined effect of Wilson's impairments. The Court also concludes that the ALJ fully considered Wilson's testimony but found him to be not credible for reasons that were properly explained in her decision. Viewing the record as a whole, substantial evidence supports the Commissioner's determination that Wilson is not disabled. Accordingly, it is hereby

**ORDERED** as follows:

(1) Plaintiff John Wilson's Motion for Summary Judgment [Record No. 6] is **DENIED**;

(2) Defendant Michael J. Astrue's Motion for Summary Judgment [Record No. 7] is **GRANTED**; and

(3) The administrative decision will be **AFFIRMED** by separate judgment entered this date.

This 13th day of October, 2010.



Signed By:
*Danny C. Reeves* DCR
United States District Judge